IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN OSHOP, GLENDA OSHOP, and ) <br> CHRISTINA OSHOP, by and ) <br> through her natural guardians ) <br> and next friends, ) <br> JOHN OSHOP, ) <br> and GLENDA OSHOP, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TENNESSEE DEPARTMENT OF ) <br> CHILDREN'S SERVICES, ) <br> JOHN DOE ONE, JOHN DOE TWO, ) <br> ANGEL McCLOUD, ) <br> RUTHERFORD COUNTY BOARD ) <br> OF EDUCATION, ) <br> HARRY GILL, Director of Schools, ) <br> MARY BYRNES, Chairman, ) <br> TERRY HODGE, Vice Chairman, ) <br> WAYNE BLAIR, DONALD JERNIGAN, ) <br> DORRIS E. JERNIGAN, SR., GRANT ) <br> KELLEY, and RICHARD E. WISE, ) <br> ) <br>     Defendants. ) | Case No.: 3:09-CV-0063 <br> Judge Trauger |

## MEMORANDUM

    Pending before the court is a Motion to Dismiss (Docket No. 10) filed by defendants John Doe One, John Doe Two, and the Tennessee Department of Children's Services ("DCS"), to which the plaintiffs have responded (Docket No. 30), and the defendants have filed a reply

1

(Docket No. 31). For the reasons described herein, the motion will be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, John and Glenda Oshop, are residents of Rutherford County, Tennessee, and they are the married parents of Christina Oshop, a young child.[1] During the 2007-2008 school year, Christina Oshop attended Homer Pittard Campus School in Rutherford County, Tennessee.

One day in November 2007, a boy in a kindergarten class at the Homer Pittard Campus School touched Christina Oshop under her panties with her consent. That night, Christina Oshop informed her mother, Glenda Oshop, of the incident. The next day, John and Glenda Oshop went to the school and met with the principal, Stan Baskin, and the kindergarten teacher, Debbie Siegfried. During the meeting, the parties agreed that, though inappropriate, the incident was "normal exploratory behavior." The plaintiffs trusted that, after the meeting, Baskin would take appropriate action regarding the incident, although the form of action was not specified at that time. John and Glenda Oshop later explained to Christina Oshop that what the boy did was inappropriate, and they instructed her that she should not allow such behavior again.

Weeks after the incident and the meetings discussed above, a DCS employee, Shane Boyles, contacted John and Glenda Oshop. Boyles instructed the Oshops to bring Christina Oshop to a DCS facility for "forensic testing." John Oshop expressed reluctance, and, on January 4, 2008, Glenda Oshop returned to the school to meet with Baskin and a school counselor, Julie Dibble, presumably to discuss the DCS request and the school's follow up to the

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

incident.  Apparently, this meeting reassured John and Glenda Oshop that the situation was being handled competently by the school, given their daughter's needs.  Specifically, the Oshops believed that, if the situation became "magnified," it would harm Christina Oshop because of her overly sensitive and emotional nature, which had previously required counseling.

Shortly thereafter, consistent with this, John Oshop informed Boyles that he did not want DCS to interview his daughter because the school had handled the situation adequately.  John Oshop told Boyles that any DCS interview would harm his daughter, because she was overly sensitive and emotional, and that she had previously received counseling for her extremely sensitive nature.

Despite the Oshops' objections, DCS contacted the Rutherford County Board of Education ("School Board") to arrange a private, one-on-one interview with Christina Oshop regarding the incident.  DCS's request apparently prevailed with the School Board, because, on January 22, 2008, Principal Baskin allowed DCS to interview Christina Oshop without the Oshops' consent or knowledge.[2]  The plaintiffs allege that defendants John Doe One and John Doe Two, both DCS employees, were key participants in the interview.  Specifically, they allege that John Doe One ordered or authorized the interview, while John Doe Two conducted the interview.  The plaintiffs further allege that both John Does were "aware that John and Glenda Oshop were opposed to the interview of their minor child."  The plaintiffs have not provided further details regarding the substance of the interview.

---

[2] The plaintiffs allege that Baskin only allowed the interview to proceed because the school board attorney threatened him with obstruction of justice charges if he did not consent to the interview.

3

On January 20, 2009, the plaintiffs filed their Complaint. The plaintiffs have brought suit against DCS, John Doe One, and John Doe Two.³ The plaintiffs sue John Doe One and John Doe Two in their official and individual capacities.

On April 6, 2009, defendants DCS, John Doe One, and John Doe Two jointly moved to dismiss all claims against them. (Docket No. 10 at 1.) As to the claims against DCS and the official capacity suits against John Doe One and John Doe Two, the defendants assert that they are immune from suit under the Eleventh Amendment and related principles of sovereign immunity. (*Id.*) As to the individual capacity suits against them, John Doe One and John Doe Two primarily assert that they are entitled to qualified immunity. (*Id.*)

## ANALYSIS

The plaintiffs bring this suit under 42 U.S.C. § 1983, alleging that the defendants' actions violated their rights under the Due Process Clause of the Fourteenth Amendment. (Docket No. 1 at 5; Docket No. 30 at 6.) Specifically, the plaintiffs claim that, when the defendants arranged and conducted the interview of Christina Oshop, they violated the plaintiffs' right to raise their daughter as they see fit. (Docket No. 1 at 5.) In addition to their constitutional claim, the plaintiffs also assert a claim of negligent infliction of emotional distress ("NIED") under Tennessee state law. (*Id.*) Defendants DCS, John Doe One, and John Doe Two have jointly

---

³The plaintiffs have also brought suit against Angel McCloud (the school board attorney), the Rutherford County Board of Education, and the individual members of that board. These defendants are not involved in the present motion.

4

moved to dismiss these claims under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).[4]  (Docket No. 10 at 1.)

I.      **Motion to Dismiss - Rules 12(b)(1) and 12(b)(6) (Sovereign Immunity)**

As noted above, DCS and John Does One and Two (in their official capacities) have moved to dismiss the suit against them pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), asserting principles of Eleventh Amendment sovereign immunity.  (Docket No. 10.) Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are both recognized as appropriate mechanisms to dismiss claims barred by Eleventh Amendment sovereign immunity.  *Nali v. Whitbeck*, No. 1:07-CV-544, 2008 WL 5381818, at *5 n.3 (W.D. Mich. Dec. 22, 2008) (citing *Na[ir] v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006)). While both Rule 12 motions are recognized as valid methods for asserting a sovereign immunity defense, state entities generally assert this right pursuant to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  *Id*.  As such, this court will analyze the defendants' motion under Rule 12(b)(1).

As noted above, Federal Rule of Civil Procedure 12(b)(1) governs the dismissal of lawsuits for lack of jurisdiction over the subject matter.  The "first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case."  *Douglas v. E.G. Baldwin & Assoc.*, 150 F.3d 604, 606-07 (6th Cir. 1998).  When

---

[4]The defendants' motion to dismiss states that they are seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(2).  (Docket No. 10 at 1.)  However, the court believes this to be a typographical error.  The court will construe the "Rule 12(b)(2)" motion as a Rule 12(b)(1) motion, because the defendants do not argue that the court lacks *personal* jurisdiction, but, rather, that the court lacks subject matter jurisdiction due to Eleventh Amendment sovereign immunity.  *See Clements v. E. Ky. Univ.*, No. Civ.A. 5:05-466-JMH, 2006 WL 1464617, at *2 n.2 (E.D. Ky. May 22, 2006) (citing *Keller v. Cent. Bank of Nig.,* 277 F.3d 811, 815 (6th Cir. 2002)).

5

challenging a court's subject matter jurisdiction under Rule 12(b)(1), a defendant may either facially attack the plaintiff's complaint, by testing the sufficiency of the pleading itself, or "factually attack" the complaint, that is, argue that the existence or non-existence of certain facts deprives the court of subject matter jurisdiction. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

An assertion of Eleventh Amendment sovereign immunity, as has been made by the defendants here, constitutes a factual attack. *See Giorgadze v. Tenn. Tech. Ctr.*, No. 2:06-CV-264, 2007 WL 2327034, at *2 (E.D. Tenn. Aug. 10, 2007). In "considering a factual attack upon the court's jurisdiction, no presumption of truth applies to the plaintiff's factual allegations, and the court is free to weigh the evidence and resolve factual disputes so as to satisfy itself as to the existence of its power to hear the case." *Id.* (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). The entity asserting sovereign immunity has the burden of establishing the applicability of the doctrine. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002). As their circumstances are slightly different, the court will consider DCS's arguments separately from the arguments of the individual defendants (John Does One and Two).

**A. DCS**

The defendant DCS argues that all claims brought against it should be dismissed because DCS is immune from suit in this court under the Eleventh Amendment's sovereign immunity doctrine. (Docket No. 11 at 7.)

The Eleventh Amendment protects states from suits brought by citizens in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). A state agency, such as DCS, is

6

protected by the state's sovereign immunity as the state itself. *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Cox v. Shelby State Comm. College*, 48 F. App'x 500, 504 (6th Cir. 2002). This protection is subject to two major exceptions: (1) where Congress has properly abrogated the states' immunity; and (2) where a state has explicitly consented to suit in federal court. *Latham v. Office of Att'y Gen. of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005).

In this case, neither exception applies. First, Congress did not abrogate the states' sovereign immunity when it passed 42 U.S.C. § 1983. *See Queen v. Jordan*, 440 U.S. 332, 345 n.16 (1979) (holding that Section 1983 did not overturn the States' sovereign immunity by imposing liability directly upon them); *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992) (holding that Congress "did not disturb the states' eleventh amendment immunity when it passed [Section] 1983"). Thus, the first exception is inapplicable to this case.

Second, the state of Tennessee has not waived its sovereign immunity. While the plaintiffs contend that the state of Tennessee waived its immunity under the Tennessee Government Tort Liability Act (GTLA), Tenn. Code Ann. § 29-20-205 (2008), this argument is plainly incorrect.[5] The GTLA applies "to all governmental entities as defined herein." Tenn. Code Ann. § 29-20-103(b). The GTLA defines a "governmental entity" as:

> any political subdivision of the state of Tennessee including, but not limited to, any municipality, metropolitan government, county, utility district, school district, nonprofit volunteer fire department receiving funds appropriated by a county legislative body or a legislative body of a municipality, human resource agency, community action agency or nonprofit corporation which administers the Head Start or Community Service Block

---

[5] The plaintiff cites *Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2005) in support of this proposition. (Docket No. 30 at 6.) The plaintiff argues that *Sallee* stands for the proposition that the state waived immunity under the GTLA for negligent infliction of emotional distress. (*Id.*) However, this is based upon a misreading of *Sallee*. Rather, *Sallee* holds that a *city*, not the *state*, is not immune from suit for the tort of negligent infliction of emotional distress under Tenn. Code Ann. § 29-20-205.

7

>Grant programs public building authority, and development district created and existing pursuant to the constitution and laws of Tennessee, or any instrumentality of government created by any one (1) or more of the named local governmental entities or by an act of the general assembly.

Tenn. Code Ann. § 29-20-102(3)(A). This language has been construed consistently as applying only to county, municipal, and other local level governments, rather than as applying to the Tennessee state government. *See Tenn. Dept. of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975) (holding that the GTLA dealt with "governmental immunity only at the county, municipal or other local level, and not the state level"); *Chapman v. Sullivan County*, 608 S.W.2d 580, 582 (Tenn. 1980) (stating that the GTLA is "intended to apply uniformly to cities and counties but not to the State of Tennessee"); *Freeman Indus. LLC v. Eastman Chem. Co.*, 227 S.W.3d 561, 567 (Tenn. Ct. App. 2006) (reaffirming *Hughes*' proposition that the GTLA "did not remove the state agencies' sovereign immunity").

Because the GTLA does not remove the state of Tennessee's sovereign immunity, the plaintiffs' argument that DCS has waived immunity in this case is without merit. Therefore, as no exception applies, DCS is entitled to dismissal from this suit.

**B. John Doe One and John Doe Two**

Insofar as they are sued in their official capacities, the Eleventh Amendment immunizes state officials from suit to the same extent as the state and state agencies. *Dubac v. Mich. Bd. of Law Exam'r*, 342 F.3d 610, 616 (6th Cir. 2003). Therefore, absent an exception, John Doe One and John Doe Two, in their official capacities, are entitled to dismissal from this case just as DCS is.

8

In addition to the two exceptions discussed in the previous section, the *Ex Parte Young* doctrine is an exception to general sovereign immunity rules applicable to state officials. *See Dubac*, 342 F.3d 616. The *Ex Parte Young* doctrine stands for the proposition that a plaintiff's claims may proceed against state officials if the complaint alleges an "ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). In general, injunctive and declaratory relief are considered "prospective" relief under the *Ex Parte Young* doctrine. *Id.* In this case, the plaintiff has requested monetary damages and attorney's fees. (Docket No. 1 at 6.) As the plaintiffs have not, therefore, requested "prospective" relief, the *Ex Parte Young* exception does not apply. Thus, the official capacity suits against John Doe One and John Doe Two will be dismissed. *See Dubac*, 342 F.3d at 616.

## II.     Rule 12(b)(6) Motion to Dismiss

As noted above, John Doe One and John Doe Two have also been sued in their individual capacities. As to this portion of the suit, John Doe One and John Doe Two primarily argue that they are entitled to dismissal of the constitutional claim under Fed. R. Civ. P. 12(b)(6) on qualified immunity grounds.[6] (Docket No. 10 at 1; Docket No. 11 at 8.) They also argue that

---

[6]Defendants John Doe One and John Doe Two also broadly argue that the Complaint fails to "attribute any specific act to any individual state defendant that would support the causes of action" and that the plaintiffs "do not distinguish between John Does One and Two." (Docket No. 11 at 6.) In this respect, the defendants appear to have overlooked a portion of the Complaint. In the "Parties" section of the Complaint, the plaintiffs assert that "John Doe One is an employee of [DCS] who ordered and/or authorized the interrogation of Christina Oshop," and that "John Doe Two is an employee of [DCS] who interrogated Christina Oshop." (Docket No. 1 at ¶¶ 1.6, 1.7.) Thus, as to the interview process, the Complaint does assert specific actions attributable to the John Does. In addition to these specific actions, the plaintiffs allege that "John Doe was further aware that John and Glenda Oshop were opposed to the interview of their minor child." (*Id.* at ¶ 4.14.) The court infers that the plaintiffs intended this allegation to apply to both John Does. Thus, the plaintiffs' Complaint alleges specific acts attributable to

9

they are entitled to dismissal of the state law NIED claim, because the plaintiffs' allegations against them are insufficient to state a claim.

### A. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion

defendants John Doe One and John Doe Two, and the defendants' argument here is without merit.

10

of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly*, 127 S.Ct. at 1965 n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely").

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 2009 WL 1361536 (May 18, 2009), the Court further expounded on the "two working principles" that underlie the *Twombly* decision. *Id.* at 1949. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to a state a claim under the

11

federal rules. *Id.* Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949.

Further, the Court explained that determining "facial plausibility" is a "context-specific task," in which the reviewing court must "draw on its judicial experience and common sense." *Id.* at 1950. Where, using this background, the court finds that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. Rule Civ. Proc. 8(a)(2)). The Court noted that, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* With this standard and guidance in mind, the court turns to an analysis of the plaintiff's claims.

### B. Qualified Immunity Defense

As noted above, defendants John Doe One and John Doe Two assert that the individual capacity suits against them should be dismissed under Rule 12(b)(6) on the basis of qualified immunity. (Docket No. 10 at 1.)

It is well settled that, when determining if an official is entitled to qualified immunity, the court engages in a two-pronged analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Goad v.*

12

*Mitchell*, 297 F.3d 497, 501 (6th Cir. 2002). In order to overcome a qualified immunity defense, the plaintiff must sufficiently show both that: (1) the individual defendant violated at least one of her constitutional rights, and (2) the right violated was "clearly established." *Saucier*, 533 U.S. at 201. The Supreme Court has also recently clarified that a court need not consider these two issues in this order when doing so would result in judicial inefficiency. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Here, however, the primary issue is whether consideration of the qualified immunity issue is premature. *See Grose v. Caruso*, 284 F. App'x 279, 283 (6th Cir. 2008). The court concludes that, under Sixth Circuit precedent, current consideration of a qualified immunity defense is premature. While qualified immunity is rooted in the premise that government officials should be free from the costs and distractions of litigation, and that they are thus entitled to dismissal from suit early in the litigation process where the claims against them are unsustainable, courts must also guard against making a qualified immunity determination too "hastily"; that is, dismissing a viable claim before discovery can provide support to the necessarily generalized complaint allegations. *Vaughn v. United States*, 65 F.3d 1322, 1326 (6th Cir. 1995); *Grose*, 284 F. App'x at 283. As the Sixth Circuit recently stated in *Grose*, "dismissals on the basis of qualified immunity are generally made pursuant to Fed. R. Civ. P. 56 summary judgement motions, not 12(b)(6) sufficiency of pleadings motions." *Grose*, 284 F. App'x at 283.

The reason for this distinction is clear. A discussion of the qualified immunity issue is "usually [dependent] on the facts of the case," and, at the pleadings stage of a litigation, there is "scant factual record" available to the court. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir.

13

2001); *Hammett v. Okla. Dept. of Mental Health and Substance Abuse Serv.*, 153 F.3d 727, 727 (10th Cir. 1998). Indeed, at the earliest stages of a litigation, even the exact contours of the right at issue (and, therefore, the degree to which it is clearly established) will likely be somewhat unclear. *Grose*, 248 F. App'x at 283. Nor is a plaintiff required to "anticipate [a qualified immunity] defense in his pleading." *Vaughn*, 65 F.3d at 1326. Therefore, one fellow district court recently reasonably concluded that, "at the 12(b)(6) stage of the litigation . . . [where] the plaintiff [has] *attempted* to make out a claim for constitutional violations, dismissal on the basis of qualified immunity [is] premature." *Haynes v. Swanson*, No. 5:07cv2352, 2008 WL 4346635, at *8 (N.D. Ohio Sept. 18, 2008) (citing *Grose*, 284 F. App'x at 283) (emphasis added); *see also McCombs v. Granville Exempted Vill. Sch. Dist.*, No. 2:07-cv-00495, 2009 U.S. Dist. LEXIS 14044, at *22 (S.D. Ohio Feb. 24, 2009) (holding that, at the motion to dismiss stage of a litigation, "[i]t would be premature to grant dismissal based on qualified immunity" where the plaintiff's complaint, though scarce, sufficiently alleged a violation of a constitutional right) (citing *Haynes*, 2008 WL 4346635, at *8; *Grose*, 284 F. App'x at 283). Indeed, consideration of a qualified immunity defense is much more appropriate once the plaintiff has had the chance to "supplement" his allegations with "more detailed facts ascertained through discovery." *Grose*, 284 F. App'x at 283; *see also McCombs*, 2009 U.S. Dist. LEXIS 14044, at *22 (holding that where a plaintiff's complaint sufficiently alleged a violation of her constitutional right, discovery should commence, and a discussion of qualified immunity would be better suited for summary judgment).

At this early stage in the litigation, the plaintiffs have sufficiently "attempted" to make out their constitutional claim. *See Haynes*, 2008 WL 4346635, at *8. The Fourteenth

14

Amendment's Due Process Clause contains "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). This fundamental right is violated when the state temporarily or permanently removes children from their parents' home and control, or when parental rights are extinguished, and the parents are not offered due process of the law.[7] *Kottmyer v. Maas*, 436 F.3d 684, 691 (6th Cir. 2006); *see also Smith v. Williams*, No. 1:04-CV-00234, 2006 WL 3716728, at *4 (S.D. Ohio Dec. 14, 2006); *Troxel*, 530 U.S. at 73. While the state is clearly permitted to investigate allegations of child abuse, investigations that are conducted in bad faith, with malicious motive, or that employ tactics that "shock the conscience" may constitute a constitutional violation. *Kottmyer*, 436 F.3d at 691, 691 n.1.

Given the early stage of the litigation, the plaintiffs have alleged sufficient facts such that their constitutional claim may move forward. Specifically, the plaintiffs allege that, well after the incident took place, a DCS official contacted them, demanding that they bring their daughter in for "forensic testing," that is, an examination or interview. In response, the plaintiffs allege that they informed DCS that such an exam would be detrimental to their young daughter because she was extremely emotionally sensitive, and that the school, understanding this, was handling the situation adequately. It is a fair inference from the Complaint that, at this time, the plaintiffs informed DCS about the breadth of actions that had already been taken to manage the situation. That is, (1) the prompt meeting at the school, where the parents, teacher, and principal agreed

---

[7]This right also includes the "right of parents to 'establish a home and bring up children' and 'to control the education of their own,'" in addition to having control over questions of visitation by non-parental actors. *Troxel*, 530 U.S. at 65, 74 (citing *Meyer* v. *Nebraska,* 262 U.S. 390, 399, 401, 67 L. Ed. 1042, 43 S. Ct. 625 (1923); *Pierce* v. *Soc'y of Sisters,* 268 U.S. 510, 534-535, 69 L. Ed. 1070, 45 S. Ct. 571 (1925)).

15

that the incident was "normal exploratory behavior," (2) the plaintiffs' discussion with their daughter about the inappropriateness of the behavior/incident, and, (3) the follow-up meeting with the school's principal and counselor. The plaintiffs allege that, despite knowing of their objection (and, presumably, its bases), John Doe One ordered John Doe Two to conduct the interview anyway, away from the parents while Christina Oshop was at school, thereby keeping the interview a secret from the parents. Given the relatively low bar the plaintiffs need to overcome at this stage, the plaintiffs have sufficiently "attempted" to make out a constitutional violation, as, accepting these allegations as true, construing them in a light most favorable to the plaintiffs, and drawing all reasonable inferences in favor of the plaintiffs, these allegations arguably indicate that the John Does violated the plaintiffs' "fundamental right . . . to make decisions concerning the care, custody, and control of their children" by conducting the interview in bad faith, with improper motive, or in a manner that "shocks the conscience." *See Troxel*, 530 U.S. at 65-66; *Kottmyer*, 436 F.3d at 691 n.1.

Finally, on the "clearly established" element, as noted above, the Sixth Circuit has concluded that a child abuse investigation conducted in bad faith can violate parents' constitutional rights. *Kottmyer*, 436 F.3d at 691 n.1. Therefore, the "clearly established" prong of the qualified immunity test does not prevent the plaintiffs' claim from moving forward. *See Grose*, 284 F. App'x at 284. Moreover, deciding the precise "boundaries" of the right at issue, and determining "[w]hether or not [defendants] possessed the requisite subjective state of mind to trigger a clearly established violation … [are] fact-specific inquir[ies] which [are] ill-suited"

16

for analysis at the pleadings stage of a litigation. *Id*. Therefore, the motion to dismiss the plaintiffs' constitutional claim in the individual capacity suits against John Doe One and John Doe Two will be denied.[8]

### C. State Law Claim

In addition to the constitutional claim, John Doe One and John Doe Two, in their individual capacities, assert that they are entitled to dismissal of the NIED claim brought against them. (Docket No. 10; Docket No. 11 at 6.) Specifically, the defendants argue that the Complaint does not show entitlement to relief on this claim, because this section of the Complaint merely asserts "legal conclusions." (Docket No. 11 at 6.)

In Tennessee, an NIED claim consists of five elements: (1) duty; (2) breach of duty; (3) injury or loss; (4) causation in fact; and (5) proximate causation. *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004.) In addition to these elements, a plaintiff must establish that the injury is supported by medical or scientific evidence. *Id*.

---

[8]The defendants argue that, because they have "filed a motion to dismiss asserting their immunity," discovery is impermissible. (Docket No. 31 at 4.) In support of this proposition, the defendant cites *Kennedy v. Cleveland*, 797 F.2d 297, 299 (6th Cir. 1986) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1984); *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). (*Id*.) The defendants are correct that *Kennedy* states that a court must "stay discovery until [the qualified immunity] issue is decided." *Id*. *Kennedy* also states, however, that, "if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a general issue as to whether the defendant in fact committed those acts." *Id*. (quoting *Mitchell*, 105 S. Ct. at 2816). This clearly indicates that, when qualified immunity is inappropriate at the pleadings stage, discovery should commence, and that qualified immunity may be raised again on summary judgment. Thus, because the plaintiffs have sufficiently alleged a violation of clearly established law, they may proceed with discovery.

17

The plaintiffs have failed to properly plead, among other things, "injury or loss," "causation in fact," and "proximate causation." The Complaint simply states that the defendants "caused infliction of severe emotional harm," that "the plaintiffs suffered in mind, lost their ability to perform their usual activities, and lost their ability to enjoy the pleasures of life," and that they suffered "substantial loss of past and future capacity for the enjoyment of life." (Docket No. 1 at ¶¶ 6.3, 7.2, 7.3.) As noted above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to state a claim. *Ashcroft*, 129 S. Ct. at 1949. The plaintiffs' allegations are simply legal conclusions, and they are not supported by any additional factual matter. In particular, the plaintiffs have failed to plead any facts regarding the substance of the interview or its aftermath and effects on the parents or the child. As such, the state law claim against the John Does will be dismissed without prejudice. *See id.*

18

## CONCLUSION

For the reasons discussed herein, the defendants' motion to dismiss will be granted in part and denied in part. The plaintiffs may proceed with their constitutional claim against John Doe One and John Doe Two in their individual capacities. The claims against DCS and the official capacity claims against John Doe One and John Doe Two will be dismissed. The NIED claim against the John Does will also be dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

19