IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN OSHOP, GLENDA OSHOP, and ) | |
| C.O., by and ) | |
| through her natural guardians ) | |
| and next friends, ) | |
| JOHN OSHOP, ) | |
| and GLENDA OSHOP, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No.: 3:09-CV-0063 |
| v. ) | Judge Trauger |
| ) | |
| RUTHERFORD COUNTY BOARD ) | |
| OF EDUCATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM

Pending before the court is a Motion for Summary Judgment filed by defendants Angel McCloud and the Rutherford County Board of Education (the "Board" and, collectively, the "Rutherford County" defendants) (Docket No. 64). For the reasons discussed herein, the Motion will be granted, and these defendants will be dismissed from this case and a final judgment will be entered in their favor.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, John and Glenda Oshop, are residents of Rutherford County, Tennessee, and they are the married parents of C.O., a young child.[1] At all relevant times,

---

[1] Unless otherwise noted, the facts are drawn from the defendants' Statement of Material Facts, which the plaintiffs do not dispute for purposes of this Motion, and related affidavits and

1

C.O. attended the Homer Pittard Campus School (HPCS). HPCS is a member school of the Rutherford County Board of Education.

In November 2007, a boy in C.O's kindergarten class touched her inappropriately with her consent. That evening, C.O. informed her mother, Glenda Oshop, of the event. The next day, John and Glenda Oshop went to HPCS and met with the principal, Stan Baskin, and C.O.'s teacher, Debbie Siegfried. During the meeting, the parties agreed that, though inappropriate, the incident was "normal exploratory behavior." The plaintiffs apparently believed that, at this point, the matter was resolved.

About two months later, in January 2008, a case manager with the Tennessee Department of Children's Services (DCS) contacted Mr. Oshop and asked to interview C.O. at the DCS Child Advocacy Center, presumably to discuss the November 2007 "touching" incident. Mr. Oshop informed the case manager that he did not want his daughter interviewed in connection with the incident because he did not believe that further discussion of the incident would be in her best interest. Again, after Mr. Oshop did not hear from anyone at DCS for a few days, he believed the matter to have been resolved. (Docket No. 67 Ex. 1 at 7.)

Despite Mr. Oshop's declining the request for the interview, DCS case manager Shane Voyles asked DCS Child Protective Services Investigator Carrie Niederhauser (also referred to in the materials filed as Carrie Perdue) to go to HPCS to conduct a further interview with C.O. and with the boy involved in the November 2007 "touching" incident. At Ms. Niederhauser's

---

exhibits. (Docket No. 66 and Docket No. 68 at 1.) Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Also, while C.O. was, in previous briefing, referred to by her full name, the parties have apparently elected to refer to her "C.O." and, therefore, the court will do so as well.

request, a Murfreesboro Police Detective, Tommy Roberts, who apparently specializes in investigating "child sex abuse" crimes, met her at the school to conduct the interview on January 22, 2008. (Docket No. 67 Ex. 1 at 54, 59-62.)

Upon arrival at the school, Niederhauser and Roberts spoke with Baskin, and they requested an opportunity to interview C.O. at the school. Based upon previous conversations with Mr. Oshop, Baskin knew that the Oshops did not want further interviews with C.O. regarding the "touching" incident to be conducted. When Baskin asked Niederhauser if he could contact the Oshops first, Niederhauser advised Baskin that he was not allowed to contact the Oshops to advise them that the interview was taking place. (Docket No. 67 Ex. 1 at 38.) In light of this, while Niederhauser and Roberts waited, Baskin contacted the Board's legal department for advice on whether he was required to permit DCS to interview a student over the parents' objection.

Board employee James Evans took the phone call from Baskin and pulled the Board attorney, defendant Angel McCloud, from a meeting so that she could address Baskin's question. Evans only conveyed to McCloud that DCS was at HPCS and that DCS wanted to interview a child there. (Docket No. 67 Ex. 1 at 28.) Based upon this understanding, Ms. McCloud advised Mr. Evans that Baskin had to allow DCS to conduct the interview at the school. Indeed, at this time, the Board's policy, which was based upon a 1987 (and since re-affirmed) Tennessee Attorney General opinion, required school administrators and employees to cooperate in DCS investigations, including permitting child abuse review teams to conduct interviews while the child was at school. (Docket No. 64 Exs. 1-2.) Evans relayed McCloud's advice to Baskin who indicated that he would not prevent the interview from taking place. Thereafter, Niederhauser

3

conducted the interview of C.O. Despite the allegation in the Complaint, the parties now agree that there is no indication that McCloud threatened Baskin with "obstruction of justice" charges if he did not permit the interview to go forward.

On January 20, 2009, the plaintiffs filed their Complaint in this case. (Docket No. 1.) The plaintiffs sued DCS, two "John Doe" defendants whom the plaintiffs claimed were the individuals at DCS responsible for supervising and conducting the interview (in their individual and official capacities), the Board, McCloud (in her official and individual capacity), and various members of the Board, who were all sued in their official capacities. (*Id.* at 2.) The plaintiffs asserted claims under Section 1983 and for negligent infliction of emotional distress (NIED) against all defendants. (*Id.* at 5-6.)

On June 10, 2009, the court granted in part and denied in part a Motion to Dismiss filed by DCS and the two John Doe defendants. (Docket Nos. 32-33.) The court dismissed all claims against DCS and all claims against the John Doe defendants in their official capacities on the grounds of sovereign immunity. (Docket No. 32 at 8-9.) As to the claims asserted against the John Doe defendants in their individual capacities, the court dismissed the NIED claim without prejudice and allowed the Section 1983 claim, which is premised on the Oshops' constitutional right to raise their daughter as they "see fit," to proceed. (Docket No. 33.) On October 1, 2009, the court granted the Motion to Dismiss filed by the individual members of the Board, finding that, under settled law, an official capacity suit against these individuals was redundant of the plaintiffs' claims against the Board. (Docket Nos. 48 and 49.)

On February 12, 2010, the plaintiffs amended their Complaint such that "all references [in the original Complaint] to John Doe One are [] amended to instead refer to Kristen Giere."

4

(Docket No. 54 at 1.) Ms. Giere has since filed a Motion to Dismiss on service of process grounds, and that motion has not been fully briefed. (Docket No. 69.) On March 12, 2010, the remaining "Rutherford County" defendants, that is, the Board and McCloud, moved for summary judgment.

## ANALYSIS

The plaintiffs bring this suit under 42 U.S.C. § 1983, alleging that the defendants' actions violated their rights under the Due Process Clause of the Fourteenth Amendment. (Docket No. 1 at 5.) Specifically, the plaintiffs claim that, when the defendants arranged and conducted the interview of C.O. out of their presence and without their knowledge, they violated the plaintiffs' right to raise their daughter as they see fit. (*Id.*) In addition to their constitutional claim, the plaintiffs also assert a claim of negligent infliction of emotional distress ("NIED") under Tennessee state law, a claim that has already been dismissed as to some of the defendants in this case. (*Id.*)

### I.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the

5

evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### A.  The Plaintiffs' Claims Against the Board and McCloud

Going into this round of briefing, the plaintiffs maintained (1) a Section 1983 claim against McCloud (in her individual and official capacities) and the Board and (2) an NIED claim against both McCloud and the Board. In response to this Motion for Summary Judgment on all claims, the plaintiffs only specifically addressed the Section 1983 claim asserted against the Board, apparently conceding that the other claims asserted against McCloud and the Board are without merit. (Docket No. 68.) Therefore, the court will briefly discuss the bases for dismissing all other claims against the Board and McCloud before turning to the lone disputed issue.

#### i.  Official capacity claims – McCloud

While the plaintiffs sued McCloud in her individual and official capacities, consistent with the court's analysis in its October 1, 2009 Memorandum and Order, an official capacity claim against McCloud is redundant of the plaintiffs' claims against the Board and is, therefore,

6

not sustainable.  (*See* Docket No. 48 at 5 citing *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) for the notion that, in an official-capacity suit, the government entity is "the only true defendant[].").

>    ii      **NIED claim – McCloud and the Board**

Also, as noted above, in the June 10, 2009 Memorandum and Order, the court dismissed the NIED claims at issue, which, by that point in the analysis, only concerned the John Doe defendants in their individual capacities.  (Docket No. 32 at 18.)  The court dismissed the claims without prejudice, finding that the plaintiffs had failed to state a claim for relief because they failed to plead various elements of the NIED cause of action, and the allegations amounted to nothing more than insufficient "legal conclusions [] not supported by any additional factual matter."  (*Id.*)

The plaintiffs have done nothing to indicate that they might have a viable NIED claim against the Board or McCloud.  Indeed, while the Oshops cite "stress" or "anxiety" related to the unauthorized interview, they concede that neither of them has sought any significant medical assistance in relation to these issues; that is, among other things, they fail to sufficiently show the "serious" or "severe" emotional injury that is required for a recoverable NIED claim.  (Docket No. 66 at 9-10; *see also Bain v. Wells*, 936 S.W.2d 618, 624 (Tenn. 1997))

Also, April Bowen, a "licensed senior psychological examiner," evaluated C.O. in November 2009 to ascertain whether she should be deposed in this case, and Bowen "saw nothing in her evaluation . . . that would support any allegation of severe emotional harm or injury to [C.O.] as a result of the DCS interview."  (Docket No. 66 at 9.)  Again, the plaintiffs also do not challenge that these defendants are entitled to judgment on the plaintiffs' NIED

7

claims. Therefore, the NIED claims against McCloud and the Board will likewise be dismissed.

### iii. Section 1983 claim – McCloud individual capacity

Additionally, the plaintiffs do not challenge that the Section 1983 claims asserted against McCloud in her individual capacity should be dismissed. Traditionally, Section 1983 individual capacity claims such as those asserted against McCloud here are evaluated under a two-step analysis, which considers whether the individual violated the plaintiffs' constitutional rights and whether, if such a violation occurred, the defendant would be entitled to "qualified immunity" because the right at issue was not "clearly established." *Pearson v. Callahan*, 129 S.Ct. 808, 816-18 (2009). Here, there appears to be no evidence that McCloud violated the plaintiffs' constitutional rights, and, therefore, it is not necessary to consider the qualified immunity issue.

As discussed in the June 10, 2009 Memorandum and Order, the Fourteenth Amendment's Due Process Clause contains "the fundamental right of parents to make decisions concerning the care, custody, and control of their children," which includes the right of parents to generally control the course of their child's home life and education. *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). The Sixth Circuit has indicated that this fundamental right to "familial association" may be violated when the state temporarily or permanently removes children from their parents' home and control, or when parental rights are extinguished, without due process. *Kottmyer v. Maas*, 436 F.3d 684, 691 (6th Cir. 2006); *see also Smith v. Williams*, 2006 WL 3716782, *4 (S.D. Ohio Dec. 14, 2006). While the state is permitted to investigate allegations of child abuse without infringing on this "familial association" right, investigations that are conducted in bad faith, with malicious motive, or that employ tactics that "shock the conscience" may constitute a constitutional violation. *Kottmyer*, 436 F.3d at 691, 691 n.1.

8

Here, the undisputed facts show that McCloud did not conduct any investigation, permissible or not. Rather, these facts show that McCloud was simply asked by an associate whether Baskin was required to permit DCS to conduct an investigation on school grounds and McCloud, citing Board policy, stated that Baskin was so required. As the defendants cogently state, "Angel McCloud's sole involvement in the matter was to advise Principal Baskin that he was required by law to cooperate with the DCS in a child abuse investigation. Angel McCloud neither initiated, directed, nor conducted the investigation." (Docket No. 65 at 9.)

Therefore, even if the DCS investigation violated the plaintiffs' rights under Section 1983, there is no indication either from the facts or the law that McCloud's failure to somehow stop that investigation would violate the plaintiffs' rights under Section 1983. Absent some additional showing of culpability not made here, "the Due Process Clause [] does not impose affirmative duties" on governmental actors, and there is "no affirmative right to governmental aid." *Brooks v. Knapp*, 221 F. App'x 402, 405-06 (6th Cir. 2007) (internal citation and quotation omitted). As there are no viable claims remaining against McCloud, she will be dismissed from this case.

### iv. Section 1983 Claim against the Board

To set forth a "cognizable Section 1983 claim against a municipality, a plaintiff must allege that (1) agents of the municipality, while acting under color of state law, (2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of inaction was the moving force behind the violation." *Memphis, Tennessee Area Local v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

The plaintiffs argue that the Board's policy of "always allow[ing] the DCS to conduct

9

interviews of children on school grounds without parental notice or consent . . . led to the constitutional violation at question in this case." (Docket No. 68 at 2.) While the plaintiffs concede that the policy is based upon a Tennessee Attorney General opinion, the plaintiffs argue that, sanctioned or not, the "policy of the Board allows school officials to wipe their hands of the consequences of any DCS activity on school property," even where, as here, "the situation did not seem right." (*Id.* at 2-4.) The plaintiffs contend that this impermissible interview only occurred "because of the school board policy requiring administrators to always cooperate with DCS." (*Id.* at 4.) In concluding, the plaintiffs argue that, under a system of compulsory education, a Board policy of "non-discretion in DCS investigations" results in a system in which "parents are unwittingly being forced into absolutely giving up their right to direct and control the upbringing of their children everyday." (*Id.* at 5.)

While reasonable minds could certainly find the apparent conduct of the DCS here troubling, the plaintiffs' argument as to the Board is misdirected. Under the well-settled three-part test cited above, in order to establish a Section 1983 violation against an entity such as the Board, the plaintiffs must show, among other things, that "*agents of the municipality*, while acting under color of state law, violated the plaintiff's constitutional rights." That is, "a plaintiff bringing a Section 1983 claim against a governmental entity must allege that the person who committed the violation was an *agent of the entity* and 'that a governmental policy or policy of inaction was the moving force behind the violation.'" *Payne v. Tipton County, Tenn.*, 2006 WL 1967046, *2 (W.D. Tenn. July 12, 2006)(citing and quoting *City of Memphis*, 361 F.3d at 902)(emphasis added).

Here, there is no evidence that *agents of the Board* violated the plaintiffs' constitutional

10

rights. Rather, as discussed above, at most, they did not somehow affirmatively prevent DCS from violating the plaintiffs' constitutional rights, which, in and of itself, is not a violation. In short, the plaintiffs must do more than simply offer policy-based reasons why the Board's policy as to DCS investigations is not wise. The Board's motion for summary judgment will be granted, and the Board will be dismissed from this case.

### v. Rule 54(b)

Lastly, McCloud and the Board request that, under Federal Rule of Civil Procedure 54(b), "for purposes of finality," the court enter a final judgment in their favor. (Docket No. 65 at 18.) Rule 54(b) states that, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Sixth Circuit has concluded that the entry of a final judgment under Rule 54(b) is appropriate only in the "infrequent harsh case" where doing so is necessary "as an instrument for the improved administration of justice." *Corrosioneering, Inc. v. Thyssen Environmental Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986)(internal quotation omitted).

The Sixth Circuit has also articulated a non-exhaustive list of factors for the district court to consider in evaluating a Rule 54(b) motion, such as " the relationship between the adjudicated and unadjudicated claims," "the possibility that the reviewing court might be obliged to consider

11

rights. Rather, as discussed above, at most, they did not somehow affirmatively prevent DCS from violating the plaintiffs' constitutional rights, which, in and of itself, is not a violation. In short, the plaintiffs must do more than simply offer policy-based reasons why the Board's policy as to DCS investigations is not wise. The Board's motion for summary judgment will be granted, and the Board will be dismissed from this case.

### v. Rule 54(b)

Lastly, McCloud and the Board request that, under Federal Rule of Civil Procedure 54(b), "for purposes of finality," the court enter a final judgment in their favor. (Docket No. 65 at 18.) Rule 54(b) states that, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Sixth Circuit has concluded that the entry of a final judgment under Rule 54(b) is appropriate only in the "infrequent harsh case" where doing so is necessary "as an instrument for the improved administration of justice." *Corrosioneering, Inc. v. Thyssen Environmental Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986)(internal quotation omitted).

The Sixth Circuit has also articulated a non-exhaustive list of factors for the district court to consider in evaluating a Rule 54(b) motion, such as " the relationship between the adjudicated and unadjudicated claims," "the possibility that the reviewing court might be obliged to consider

11

the same issue a second time," and "miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like." *Lowery v. Fed. Express Corp.*, 426 F.3d 817, 822 (6th Cir. 2005).

Under the unique facts of this case, entry of a final judgment is appropriate. The only claim remaining is a Section 1983 claim asserted against the "John Doe" defendants in their individual capacities. This claim, as indicated above, is in flux. While the plaintiffs have identified the individuals who they believe represent these "John Does," they only formally named Ms. Giere as a defendant, and she has a Motion to Dismiss pending for failure of service of process. Given the ease with which the claims against the other defendants were dispensed with, the differing set of facts relevant to the claim against these remaining defendants, and the uncertain nature of how long it will take to resolve the remaining claim, there is no "just reason" to delay the entry of a final judgment as to the defendants whose claims have been resolved. Therefore, the court will enter a final judgment dismissing this case as to all defendants except Kristen Giere and the "John Doe" defendants in their individual capacities (including individuals who may be identified as the "John Doe" defendants).

## **CONCLUSION**

For the reasons discussed above, the defendants' Motion for Summary Judgment will be granted, and a final judgment will be entered.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

12